UNITED STATES, Appellee

v.

Charles W. BROWN, Jr., Specialist
U.S. Army, Appellant.

No. 94–0554.
CMR No. 9202620.

U.S. Court of Appeals for
the Armed Forces.

Argued May 17, 1995.

Decided Sept. 28, 1995.

For Appellant: *Captain Don F. Pollack* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker, Major Roy H. Hewitt* (on brief); *Lieutenant Colonel James H. Weise* and *Major Fran W. Walterhouse.*

For Appellee: *Captain John G. Giovannelli* (argued); *Colonel John M. Smith, Lieutenant Colonel James L. Pohl, Captain Michael E. Mulligan* (on brief); *Captain Glenn L. Kirschner.*

*Opinion of the Court*

COX, Judge:

1. Appellant was tried by a general court-martial composed of officer and enlisted members at Conn Barracks, Schweinfurt, Germany. Contrary to his pleas, he was convicted of rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. He was sentenced to a dishonorable discharge, confinement for 15 years, total forfeitures, and reduction E-1. The convening authority approved the sentence; and the findings and sentence were affirmed by the Court of Military Review.[1]

2. Appellant raised numerous issues on appeal. We granted his petition on two issues.[2] As to Issue II as modified, the Government concedes that post-trial clemency matters submitted by appellant to the convening authority were never considered. Without conceding that appellant has met "his heavy burden of establishing ineffective assistance of counsel or any resulting prejudice," the Government agrees that appellant is entitled to a new post-trial recommendation. Answer to Final Brief at 9. Thus, we will confine this opinion to granted Issue I.

### FACTS

3. The victim in this case is a German woman, CM. From approximately May 16 to June 17, 1992, the victim was hospitalized for a spinal operation. During this time, she asked a friend, Marion Spiegel, to look after her pets. Because Ms. Spiegel was not allowed to have pets in her apartment, she agreed to visit the pets at CM's apartment. Ms. Spiegel eventually moved into CM's dwelling and brought her boyfriend (appellant) to stay with her. After CM returned from the hospital, she asked Ms. Spiegel to move out.

4. It is evident by all accounts that CM, Ms. Spiegel, and appellant had developed a friendship. Appellant had purchased groceries for CM on occasion when CM was out of money. On July 1, 1992, appellant arrived at CM's home late in the evening. She opened the door for him, and the two talked for some time. CM's account is that appellant arrived with pizza. CM was lying on the couch in her nightshirt because the body cast made it impossible for her to sleep in her bed. "One thing led to another" and the next thing she knew, appellant was on top of her. According to CM, she began fighting him off, but the body cast made it difficult. She stated that appellant tried to choke her. She finally decided to "get it over with" because she was afraid of being killed.

5. After appellant went to sleep, CM went to a neighbor and reported the assault. The neighbor described her as hysterical with a cut on her face. The German police were called and came to the apartment.

6. A post-incident physical examination of CM showed that her body cast had turned into her body, requiring a doctor to use pliers to turn it back out. She had a swollen face and a bruise in the crook of her right arm. She had a cut on her face. She testified as to trying to scream but that appellant had choked her.

7. Appellant's account of the evening is quite the contrary. He claims that he had visited CM earlier in the day and that they had discussed his relationship with Ms. Spiegel. CM invited him to return to the apartment that evening and gave him keys to the apartment. Appellant left the apartment

---

1. *See* 41 MJ 213, 229 n. * (1994).

2. The two issues granted were the following:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF SPC BROWN WHEN HE FAILED *SUA SPONTE* TO INSTRUCT THE PANEL THAT MISTAKE OF FACT IS A DEFENSE TO RAPE.

II (MODIFIED)

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY THE FAILURE OF THE TRIAL DEFENSE SERVICE OFFICE AT THE UNITED STATES DISCIPLINARY BARRACKS TO TRANSMIT HIS CLEMENCY MATERIALS TO THE CONVENING AUTHORITY IN A TIMELY MANNER AND THE FAILURE OF HIS APPOINTED DEFENSE COUNSEL TO FOLLOW UP ON HIS REQUEST THAT APPELLANT'S CLEMENCY MATERIALS BE TRANSMITTED. *SEE ALSO UNITED STATES V. SPURLIN*, 33 MJ 443 (CMA 1991); *UNITED STATES V. SIDERS*, 15 MJ 272 (CMA 1983).

and went to play pool. He drank heavily during the pool games. He returned to the apartment around 11:00 p.m. and let himself in. He found CM on the couch dressed in her nightgown in a semi-spread eagle position with one leg over the edge of the couch. He played some music cassettes and then lay down on the floor where he dozed off. He claims that he woke up some time later because CM had come over and was rubbing his leg, speaking provocatively to him, telling him that Ms. Spiegel was no good for him. Appellant says that he then turned her over so that they were able to engage in sexual intercourse. After he had reached an orgasm, he stated that he did not feel right about what they had done because of his relationship with Ms. Spiegel. He stopped his sexual activity and fell asleep. The next thing he recalled was being awakened by the German Polizei.

## THE DEFENSE ARGUMENT

8. At trial, the defense theory of the case was that CM had initiated the sexual adventure. There was considerable evidence that both appellant and CM had been drinking. Indeed, the evidence showed that CM had consumed 19 ounces of Bacardi Rum on the night in question and had a blood alcohol level of .20%. Appellant had consumed 9 beers and rum that night, and he had a blood alcohol content of over .10%.

9. Appellant reasoned that the distortions to the body cast and the other physical indications of an assault were the result of a passionate encounter between the two. Appellant was insistent that the intercourse was completely consensual. Appellant concedes on appeal that voluntary intoxication is no defense to rape (Final Brief at 3), but he now claims that the military judge should have considered the degree of intoxication as bearing upon a mistake-of-fact defense. "It was error ... for [the military judge] to fail to specifically advise the members that SPC Brown's intoxication should be considered in determining whether SPC Brown may have been mistaken with regard to whether [CM] consented to sexual intercourse." *Id.* at 4.

## THE LAW

10. Judge Gierke, writing for the Court regarding the duty to instruct, stated in *United States v. McMonagle*, 38 MJ 53, 58 (CMA 1993), the following:

The military judge has an affirmative, sua sponte duty to instruct on special defenses reasonably raised by the evidence. RCM 920(e)(3), Manual [for Courts–Martial, United States, 1984], supra; *United States v. Simmelkjaer*, 18 USCMA 406, 40 CMR 118 (1969). "The test whether a defense is reasonably raised is whether the record contains some evidence to which the military jury may attach credit if it so desires." 18 USCMA at 410, 40 CMR at 122. Notwithstanding the waiver provisions of RCM 920(f), we have held that failure to request an instruction required by RCM 920(e)(3) does not waive the error. *United States v. Taylor*, 26 MJ 127, 129 (CMA 1988).

Special defenses include justification ..., accident ..., and mistake of fact (RCM 916(j)).... The military judge's duty to instruct is not determined by the defense theory; he must instruct if the defense is raised. Any doubt whether an instruction should be given "should be resolved in favor of the accused." *United States v. Steinruck*, 11 MJ 322, 324 (CMA 1981).

11. The question, therefore, is—was there some evidence in the record to which the military jury may attach credit if it so desires? This standard is somewhat vague. The Government argues that the defense held steadfastly to appellant's account that the sex was consensual, while they argued the contrary, and that in such "a vigorously contested case, as this record shows, there is no reason to think anyone overlooked the defense." Answer to Final Brief at 8. Appellant offers only the element of intoxication to raise a defense of mistake of fact. Unable to avail himself of an intoxication defense since voluntary intoxication is not a defense, appellant is trying now to obviate this rule by getting intoxication evidence in through mistake of fact.

12. Thus, we are called upon once again to determine if the evidence in this case "reasonably raised" the mistake-of-fact defense. Or, in the words of Judge Gierke— did the failure of the military judge to sua sponte instruct "invade [ ] the prerogative of the court members to decide, under proper instruction, what the truth is." *United States v. Buckley*, 35 MJ 262, 265 (CMA 1992), *cert. denied*, — U.S. —, 113 S.Ct. 1365, 122 L.Ed.2d 743 (1993).[3]

13. Our review of the facts leads us to but one conclusion. Appellant rested his case upon his testimony that the prosecutrix initiated the sexual encounter and the resulting sexual intercourse. There was no scienter of mistake, be it reasonable or honest, in either his version or her version of the facts of the case. Faced with the testimony of the victim corroborated by her physical injuries, her twisted body cast, and her fresh complaint to her neighbors, the factfinders simply did not believe appellant's version of the facts. *United States v. Spurlin*, 33 MJ 443, 445 (CMA 1991).

The decision of the United States Army Court of Military Review as to findings is affirmed. The action of the convening authority is set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to an officer exercising general court-martial jurisdiction over the accused for consideration of the post-trial submission and for issuance of a new action on the sentence. Thereafter, the record will be returned to the Court of Criminal Appeals for further review of the sentence and then will be forwarded directly to this Court.

Chief Judge SULLIVAN and Judges CRAWFORD and GIERKE concur.

WISS, Judge (concurring with exception):

14. I concur fully in the majority opinion except for subparagraph 2 of footnote 3. The unanimous opinion of the Court in *United States v. Taylor*, 26 MJ 127, 128–29 (CMA 1988), explained that recognition of the *sua sponte* duty of a military judge to instruct on any affirmative defense reasonably raised by the evidence goes back to the beginning of this Court's jurisprudence, *see United States v. Ginn*, 1 USCMA 453, 4 CMR 45 (1952). Further, the *Taylor* Court explained that "this Court has rested the duty to instruct on affirmative defenses primarily on Article 51(c) of the Uniform Code, 10 USC § 851(c), rather than on Manual provisions." 26 MJ at 129.

15. In that context, it would not seem that RCM 920(e)(3), Manual for Courts–Martial, United States, 1984, is particularly relevant one way or the other regarding whether such an instruction must be given *sua sponte* or, instead, is waived if not requested by counsel. Given the long and unbroken line of precedent on this issue and given the statuto-

3. We have consistently held over the years that failure of the defense to request an instruction as to affirmative defenses does not "waive" the issue. *United States v. Taylor*, 26 MJ 127 (CMA 1988). Given this state of the law, we make three observations.

(1) In every case where consent is the theory of defense to a charge of rape, the military judge would be well-advised to either give the "honest and reasonable mistake" instruction *or* discuss on the record with counsel applicability of the defense. Absent this on-the-record consideration of the issue, appellate courts are left to "Monday morning quarterbacking," a job we are ill-equipped to do. Otherwise, there would be few dissents in these cases. *See United States v. Buckley*, 35 MJ 262 (CMA 1992), *cert. denied*, — U.S. —, 113 S.Ct. 1365, 122 L.Ed.2d 743 (1993).

(2) Absent RCM 920(e)(3), Manual for Courts–Martial, United States, 1984, we might consider overruling *United States v. Taylor, supra*, and require that an accused must request instructions on affirmative defenses or else the issue is waived, absent plain error. Even if there were any interest in this, we would be reluctant to overrule a precedent of this Court unless we were requested to do so and had the benefit of the briefs and arguments of the respective parties. *See United States v. Kossman*, 38 MJ 258 (CMA 1993).

(3) Lastly, it is hard to believe that paragraph 5–11, Military Judges' Benchbook at 5–21 [Dept. of the Army Pamphlet 27–9 (Change 1, Feb. 1985)] does not have a statement in 2–inch high letters, "INSTRUCT ON REASONABLE AND HONEST MISTAKE IN ALL RAPE CASES INVOLVING CONSENT UNLESS THE DEFENSE COUNSEL AGREES THAT THE DEFENSE IS NOT RAISED." The reason for this admonition lies at the heart of the dissents in *Buckley* and other cases. Why invite an appellate issue?

ry basis of that precedent, I have no inclination to consider overruling it simply because, in a handful of cases, the military judge has not been sensitive to the apparent need either to instruct or to obtain on the record defense counsel's affirmative request not to instruct.