# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*

**UNITED STATES, Appellee**
**v.**
**Private E2 JOSHUA C. DAVIS**
**United States Army, Appellant**

ARMY 20130996

Headquarters, 21st Theater Sustainment Command
Reynold P. Masterton, Military Judge (arraignment & pretrial motions)
David H. Robertson, Military Judge (pretrial motions & trial)
Colonel Jonathan A. Kent, Staff Judge Advocate

For Appellant: Lieutenant Colonel Charles Lozano, JA; Major Yolanda McCray Jones, JA; Captain Payum Doroodian, JA (on brief).

For Appellee: Major A.G. Courie III, JA; Major Steven J. Collins, JA; Major Lionel C. Martin, JA (on brief).

25 November 2015

---------------------------------
OPINION OF THE COURT
---------------------------------

WOLFE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of one specification of rape in violation of Article 120, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 920 (2012). The panel acquitted appellant of two specifications of rape, one specification of sexual assault, and one specification of communicating a threat. The panel sentenced appellant to a bad-conduct discharge, confinement for six months, and to be reduced to the grade of E-1. The convening authority approved the sentence as adjudged and one day of confinement credit.

Appellant's case is now before us for review pursuant to Article 66, UCMJ. Appellant raises two assignments of error, both of which merit discussion, but neither of which merits relief. Appellant personally raises two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), neither of which merits discussion or relief.

**BACKGROUND**

Appellant and Private First Class (PFC) BJH were friends, having gone through basic training and advanced individual training together, to include serving in the same platoon. Both were subsequently assigned to Germany. Private First Class BJH testified that prior to the offense for which appellant now stands convicted, there were two other instances of sexual conduct between her and appellant. The first was a consensual episode which PFC BJH ended by telling appellant to stop (and to which he subsequently complied without incident). As to the second instance, PFC BJH testified that while the two of them were driving together at night, appellant parked the car in a deserted area and forcibly raped her.[1] Approximately two weeks later, after finishing morning physical training, PFC BJH ran into appellant and decided to confront him about the prior alleged assault. Appellant asked to speak to her and to go up to her barracks room. Private First Class BJH testified that she was comfortable talking to appellant in her room because unlike the previous occasion, she was sober, it was in the middle of the morning, and she left her room door open.

Private First Class BJH provided the only witness testimony about the assault in her barracks room. Upon entering her barracks room with appellant, PFC BJH left the door to the room open and went into the bathroom to change out of her physical training gear and into her duty uniform. As she was pulling up her fatigue pants, she looked up and saw that the room door had been closed and appellant was walking towards her. Appellant stated, "You don't need to put those pants on," picked up PFC BJH, and then dropped her onto her bed. While pinning her arms, appellant retrieved a dildo from BJH's nightstand and forcibly inserted it into her vagina. Appellant kept inserting the dildo into PFC BJH's vagina while she told him to stop. At some point, she began to cry. Private First Class BJH further testified that once she started to cry, appellant stopped assaulting her with the dildo, got up, and threatened to rape her with an empty wine bottle if she did not "do him."[2] The encounter eventually ended when PFC BJH was able to text her girlfriend, Specialist (SPC) BH, for help and appellant left the room.

Upon receiving PFC BJH's text, SPC BH went to PFC BJH's barracks room. When SPC BH arrived at PFC BJH's barracks room and heard what had happened, SPC BH decided to confront appellant. Specialist BH called appellant and found out he was in his barracks room in the same building. Both women went to his room.

---

[1] Appellant was acquitted of the charges stemming from this allegation.

[2] This allegation formed the basis of the threat charge of which appellant was subsequently acquitted.

As the testimony addressing the encounter between SPC BH, PFC BJH, and appellant is critical to resolving the first assignment of error, we include a portion of the record at length.[3]

Private First Class BJH testified to the encounter as follows:

> [S]o we both went and knocked on [appellant's] door. And I was standing off to the side when [SPC BH] was in the middle of the doorway, she was yelling at [appellant] like, "What the fuck did you do?" And that's whenever [appellant] said, "I didn't do anything." And then whenever I came over to where he could see me that's when I – don't remember exactly what I said, but I was basically was like, "How are you going to lie? It just happened?" And that's whenever [appellant] said, "I thought she was joking until I saw her crying."

On direct examination by the government, SPC BH testified to the same encounter at appellant's doorway as follows:

> Q: When you heard [about the assault], what did you do?
>
> A: I instantly pulled my phone out, called him, and I asked [appellant] where he was. And he said that he was downstairs in his room and I didn't even get off the phone, I was already down the stairs in his room, opened the door, and I then confronted him about it.
>
> Q: Was [PFC BJH] with you?
>
> A: Yes, sir.
>
> Q: Tell me how the confrontation happened.
>
> A: I opened the door and I blatantly said, "What the fuck did you do to her?" And he was like, "I don't know what you are talking about." And I was like, "Bullshit. She is crying. She is telling me that something happened." And he was like, "Oh, I thought it was a joke. I didn't think

---

[3] In his first assignment of error, appellant alleges "The military judge erred in failing to *sua sponte* instruct the panel members of a special affirmative defense of mistake of fact reasonably raised by the evidence and this error was not harmless beyond a reasonable doubt."

she was being serious. And I didn't realize it until she
started crying."

In addition to the testimony of PFC BJH and SPC BH, the government also
introduced pictures of bruises on PFC BJH's arms taken immediately after the
assault and evidence that there was male DNA at the base of the dildo consistent
with the DNA profile of appellant.[4]

In defense, appellant offered testimony that PFC BJH was not a truthful
person and expert testimony that the age of the bruises depicted in the photographs
was inconsistent with the timeline proffered by PFC BJH. The defense also admitted
some evidence of a stormy romantic relationship between SPC BH and PFC BJH and
argued that the panel could infer that the bruises were the result of a domestic
battery.[5]

In rebuttal, the government offered expert testimony attacking the validity of
the defense expert's ability to date bruises based on a photograph. Additionally, the
government offered additional eyewitness testimony on the appearance of the bruises
immediately after the assault.

The government did not offer physical evidence or expert testimony regarding
the offenses for which appellant was acquitted.

## DISCUSSION

### *A. Instructions*

As noted, in his first assignment of error, appellant argues the military judge
failed to *sua sponte* instruct the panel members on the defense of mistake of fact.
Appellant argues that his statement after being confronted with an allegation of rape
of "I thought she was joking until I saw her crying" reasonably raised a mistake of
fact as to consent defense.

A military judge has an affirmative duty to instruct on special defenses
reasonably raised by the evidence. Rule for Courts-Martial [hereinafter R.C.M.]
920(e)(3). "The test for determining whether an affirmative defense of mistake of
fact has been raised is whether the record contains some evidence of an honest and

---

[4] The government's DNA expert testified that as a result of the partial Y-STR
profiles obtained, she would expect to see this profile one in 2,016 Caucasian
individuals, one in 685 Black individuals, and one in 917 Hispanic individuals.

[5] At the time of the assault, SPC BH described PFC BJH as her girlfriend. By the
time of trial, SPC BH and PFC BJH had entered into a domestic partnership.

reasonable mistake to which the members could have attached credit if they had so desired." *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F. 2003). Put differently, an instruction on a defense is not required if no reasonable panel member could find the defense applicable. *United States v. Schumacher*, 70 M.J. 387, 389-90 (C.A.A.F. 2011) (stating that the test is similar to the test for legal sufficiency).

When a defense has more than one element, in order for that defense to be reasonably raised by the evidence there must be some evidence as to each separate element of the defense. As our superior court stated in *Schumacher*, "the military judge must answer the legal question of whether there is some evidence upon which members could reasonably rely to find that *each* element of the defense has been established." *Schumacher*, 70 M.J. 387 at 389-90 (emphasis added).

Thus, in order to put the defense of mistake of fact as to consent at issue in this case, there must be: 1) some evidence to which the members could attach credit that the appellant honestly believed that BJH was consenting to the insertion of the dildo into her vagina; and 2) some evidence to which the members could reasonably attach credit that such a belief was reasonable.

An accused is not required to testify in order to establish a mistake of fact defense. *United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1998). The evidence to support a mistake of fact instruction can come from evidence presented by the defense, the prosecution, or the court-martial. *Id.* (citing R.C.M. 916(b) discussion). However, the "defense theory at trial and the nature of the evidence presented by the defense are factors that may be considered in determining whether the accused is entitled to a mistake of fact instruction." *Hibbard*, 58 M.J. at 73; *see also United States v. DiPaola,* 67 M.J. 98, 100 (C.A.A.F. 2008).

1. Standard of Review

The law governing the standard of review in this case can be difficult to determine with precision. Courts have at times vacillated on whether instructions on defenses are reviewed for an abuse of discretion, reviewed *de novo*, or, reviewed for plain error when an appellant did not request an instruction.

Appellant asks this court to conduct a *de novo* review based on *United States v. McDonald*, 57 M.J. 18 (C.A.A.F. 2002). For the reasons discussed below, we determine that appellant forfeited the instructional issue and will therefore review the case for plain error.

We start our analysis with the promulgation of the rules for court-martial in the 1984 *Manual for Courts-Martial, United States* (1984 ed.) [hereinafter *MCM, 1984*]. Rule for Courts-Martial 920(f) states that "[f]ailure to object to an instruction or to an omission of an instruction before the members close to deliberate

constitutes [forfeiture][6] of the objection in the absence of plain error." The drafter's analysis to R.C.M. 920(f) indicates a specific intent to adopt the federal practice in this area. *See MCM,* 1984, R.C.M. 920(f) Analysis at A21-61 (stating that the rule is based on Federal Rule of Criminal Procedure (Fed. R. Crim. P.) 30). Notably, such a rule is in accordance with the mandate of Article 36, UCMJ, that the President may prescribe rules which shall, as far as practicable, "apply the principles of law generally recognized in the trial of criminal cases in the United States district courts."

The first case to address this issue was *Taylor*, 26 M.J. 127. In *Taylor*, the Court of Military Appeals rejected the language in R.C.M. 920(f) that placed the burden on the parties to object to an instruction and instead determined that there was no requirement for the defense to request a mistake of fact instruction in a rape case. The *Taylor* court even specifically rejected the drafter's analysis indicating an intent to follow Fed. R. Crim. P. 30. *Id.* at 128. Instead, the court in *Taylor* noted that "from its earliest days, this Court has rested the duty to instruct on affirmative defenses primarily on Article 51(c) of the Uniform Code, 10 U.S.C. § 851(c), rather than on Manual provisions."[7] *Id.* at 129.

Thus, the *Taylor* court treated instructions on defenses similarly to instructions on elements—that is, they are mandatory, reviewed *de novo*, and with no provision for forfeiture.[8]

---

[6] Rule for Courts-Martial 920(f) continues to use the word "waiver." For consistency, and in fidelity to the analytical construct set forth by our superior court, we will use the correct term of "forfeiture." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' The distinction between the terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal.") (internal citations and quotations omitted).

[7] The *Taylor* court's interpretation of Article 51(c), UCMJ, may be subject to reconsideration. While Article 51(c) of the 1950 UCMJ, did require instructions on elements, it was silent with respect to instructions on defenses, the issue in both this case and in *Taylor*. Additionally, as military judges were not added to the code until 1969, Article 51(c) was directed at "the law officer of a general court-martial" and "the President of a special court-martial." *Id.* The *Taylor* court did not address this evolution when interpreting Article 51(c).

[8] Currently, in accordance with R.C.M. 920, "required instructions" include those describing the elements of the charged offenses, the elements of each lesser-included offense in issue, and any special defense in issue.

However, almost immediately, *Taylor* was called into question. *United States v. Eckhoff*, 27 M.J. 142, 144 (C.M.A. 1988) (finding forfeiture when the defense failed to object to the military judge's instruction on the defense of entrapment instruction); *United States v. Gittens*, 39 M.J. 328, 331 (C.M.A. 1994) (a defense failure to request an accomplice instruction constitutes forfeiture, albeit there may be a case where a judge's failure to give such an instruction would be plain error); *United States v. Gomez*, 46 M.J. 241, 247 (C.A.A.F. 1997) (testing for plain error when appellant failed to object to mandatory instructions on lesser-included offenses); *United States v. Grier*, 53 M.J. 30, 34 (C.A.A.F. 2000) (Failure to object to an error in instructing on definitions of the elements before the panel begins deliberation is tested for plain error.); *United States v. Guthrie*, 53 M.J. 103, 106 (C.A.A.F. 2000) ("failure to object to instructions as given or to request additional instructions forfeits the issue on appeal"); *United States v. Browning*, 54 M.J. 1, 6 (C.A.A.F. 2000) (defects in instructions on the elements of conspiracy were forfeited absent plain error); *United States v. Simpson*, 56 M.J. 462, 465 (C.A.A.F. 2002) ("A failure to object to an instruction [on a lesser-included offense] prior to commencement of deliberations [forfeits] the objection in the absence of plain error.").

This approach is consistent with our superior court's approach when reviewing other unpreserved errors, even errors of a "constitutional" dimension. *See United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011) ("Whether there has been improper reference to an accused's invocation of her constitutional right to remain silent—in testimony or argument—is a question of law that this Court reviews *de novo*. Where, as here, there are no objections at trial, this Court reviews for plain error.") (citations omitted).

Importantly, we stress here that a *de novo* review and plain error are not mutually exclusive. *See United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013) ("Whether an offense is a lesser included offense is a question of law that is reviewed *de novo*. . . . Because there was no objection to the instruction at trial, we review for plain error.") (citations omitted).

More recent case law also leads us to the conclusion that the appropriate standard of review when an accused fails to object to a mandatory instruction is "plain error." In *United States v. Wilkins*, for example, our superior court found error, but after testing for plain error, upheld the conviction. 71 M.J. 410, 412-13 (C.A.A.F. 2012). This result is consistent with our superior court's most recent decisions. *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011) (applying plain error analysis to a mandatory instruction); *United States v. McMurrin*, 70 M.J. 15, 17 (C.A.A.F. 2011) (reviewing for plain error when there is no objection to instructions on a lesser-included offense); *United States v. Arriaga*, 70 M.J. 51, 54 (C.A.A.F. 2011) ("Whether an offense is a lesser-included offense is a question of law we review *de novo*. As there was no objection to the instruction at trial, we review for plain error") (internal citation and quotation marks omitted).

7

Finally, and we find conclusively, in *United States v. Payne*, the C.A.A.F. determined that appellant's failure to properly object to or request a mandatory instruction forfeited the error. 73 M.J. 19, 23 (C.A.A.F. 2014). The *Payne* court specifically adopted the drafter's analysis to R.C.M. 920(f), in direct contrast to the Court of Military Appeals' analysis in *Taylor* over twenty-five years earlier. *Id.*

Thus, the overwhelming precedent adopts the forfeiture provisions in R.C.M. 920(f), with only occasional precedent to the contrary. *See e.g. United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000) ("[T]he waiver rule in [R.C.M.] 920(f) applies only to the instructions listed in [R.C.M.] 920(e)(7), but does not apply to required instructions such as those on reasonable doubt, elements of the offenses, and affirmative defenses.") (citing *Taylor* 26 M.J. at 128) (internal quotation marks omitted); *United States v. Stanley*, 71 M.J. 60, 63 (C.A.A.F. 2012) ("[forfeiture] does not apply to required instructions such as . . . affirmative defenses") (citing *Davis*, 53 M.J. at 205) (internal quotation marks omitted).

We therefore hold that the failure of the defense to request or object to an instruction on a defense forfeits the issue, absent plain error. This is consistent with the majority and more recent decisions of our superior court, adheres to the requirements of R.C.M. 920(f), and is generally consistent with the practice in federal civilian courts.[9]

---

[9] As the first circuit stated in *United States v. Gonzalez*:

> The scope of our review is shaped by whether petitioner properly raised and preserved an objection to the instructions at trial. We review a properly preserved objection to the form and wording of an instruction given by the district court for abuse of discretion. While we would review *de novo* a claim that an instruction embodied an error of law, we also review for abuse of discretion whether the instructions adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues. A trial court's refusal to give a particular instruction is reversible error only in the relatively rare case in which the requested instruction was (1) substantively correct; (2) not substantially covered elsewhere in the charge; and (3) concerned a sufficiently important point that the failure to give it seriously impaired the defendant's ability to present his or her defense.

(continued...)

While we determine that *Taylor's* continued vitality has been significantly eroded, the requirement that a military judge *sua sponte* give an instruction on a raised defense, even without a defense request, survives intact. *United States v. MacDonald*, 73 M.J. 426, 434 (C.A.A.F. 2014) ("If an affirmative defense is reasonably raised by the evidence, the military judge has a *sua sponte* duty to instruct the members on that defense.").

Notably, the C.A.A.F. in *United States v. Brown*, 43 M.J. 187, 190 n.3 (C.A.A.F. 1995), suggested in a footnote that they would "consider overruling" *Taylor* and instead "require that an accused must request instructions on affirmative defenses." Read thusly, a special defense would be "in issue" under R.C.M. 920(e)(3) when it is requested by the defense *and* is raised by some evidence. If in issue, a military judge would continue to be required to instruct on a defense, and the mandatory instruction requirement in R.C.M. 920(e) would be reconciled with the forfeiture provisions in R.C.M. 920(f) calling for plain error review for unpreserved objections. However, our superior court has never explicitly adopted the view suggested by *Brown*, 43 M.J. at 190 n.3, and we decline to do so today.

Accordingly, for mandatory instructions under R.C.M. 920(e)(1)-(3), a military judge retains the *sua sponte* duty to instruct on defenses raised by some evidence. For non-mandatory instructions under R.C.M 920(e)(7) a military judge possesses substantial discretion in deciding what instructions to give. *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993). While a military judge "has wide discretion" as to the "form" of the instruction, *United States v. Behenna*, 71 M.J. 228, 232 (C.A.A.F. 2012), whether an instruction is a correct statement of the law is reviewed *de novo. United States v. Ivey*, 53 M.J. 685 699 (Army Ct. Crim. App. 2000) *aff'd on other grounds,* 55 M.J. 251 (C.A.A.F. 2001). Nevertheless, in the case of any unpreserved error, the failure to request or object to an instruction on a defense forfeits the matter, absent plain error.

## 2. Analysis

On appeal, appellant argues the statement "that he 'thought it was a joke' and did not think PFC [BJH] was 'serious . . . until she started crying'" warrants the mistake of fact instruction.

---

(…continued)
> If, however, a defendant fails to preserve his objection to jury instructions, we review only for plain error.

570 F.3d 16, 21 (1st Cir. 2009) (emphasis added) (internal citations and quotation marks omitted).

Under appellate defense counsel's view, the phrase "I thought *it* was a joke" (emphasis added), uttered by appellant to SPC BH, was a reference to PFC BJH's conduct during the alleged assault—presumably that appellant thought her repeated statement of "no" was a joke. The problem with this view is that there is no evidence in the record that during the confrontation in appellant's doorway, SPC BH or PFC BJH discussed the details of the assault allegations with appellant. Appellant also appears to argue for the first time on appeal that the statement that appellant didn't "think she was being serious" until she started crying was describing his subjective mental belief at the time of the assault, i.e., that he came to understand PFC BJH actually meant "no" to his sexual advances when she began to cry. The record supports this understanding to a degree as PFC BJH testified that appellant stopped raping her with the dildo when she began to cry.[10] Notably, however, the defense counsel at trial did not share this understanding as they did not pursue a mistake of fact defense nor argue that appellant thought her resistance was a joke.[11]

We read the testimony of SPC BH and PFC BJH very differently from appellant. Considered together, we assess the interaction as follows: After the door to appellant's barracks room was opened, SPC BH confronted appellant with an expletive-laden demand for an explanation as to what happened. Appellant responds with a denial, claiming that he doesn't know what SPC BH is talking about. During the initial part of the encounter, PFC BJH was off to the side but then moved into view "where he could see me." Specialist BH responded to appellant's denial by stating "Bullshit. She is crying." Appellant then responded by stating he "thought it was a joke," that he "didn't think she was being serious," and he "didn't realize it until she started crying." The natural and clearly more likely meaning of appellant's last statement is a commentary on the situation that had just unfolded in front of him at his doorway: 1) he was confronted with an accusation; 2) he stated that the accusation was a joke; and 3) he realized the accusation was not a joke when PFC BJH stepped into view and SPC BH drew his attention to the fact that PFC BJH was crying.

The plain error exception should "be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United*

---

[10] We note without considering that PFC BJH's further testimony that appellant then immediately threatened to rape PFC BJH with a wine bottle would be inconsistent with the view that appellant stopped assaulting her with the dildo when he realized she was not consenting.

[11] In closing, the trial defense counsel argued the meaning of the doorway confrontation as follows: "[PFC BJH] gets her girlfriend and she goes up to the room of a man that just attacked her. And what does PFC [BJH] and SPC [BH]'s testimony say about that conversation? It gives us [nothing] other than a vague statement completely devoided contact [sic] [devoid of context]."

*States v. Cousins*, 35 M.J. 70, 75 (C.M.A. 1992) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.4 (1982)); *United States v. Jackson*, 38 M.J. 106, 111 (C.M.A. 1993). "[W]e are generally not inclined to reverse a case where additional instructions are belatedly proposed by the defense for the first time on appeal." *United States v. Smith*, 34 M.J. 200, 203-04 (C.M.A. 1992).

"Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *United States v. Flores*, 69 M.J. 366, 369 (C.A.A.F. 2011). With regards to instructions, "to constitute plain error, the error must not only be both obvious and substantial, it must also have 'had an unfair prejudicial impact on the jury's deliberations.'" *United States v. Fisher,* 21 M.J. 327, 328 (C.M.A. 1986); *Eckhoff*, 27 M.J. 142 (C.M.A. 1988); *United States v. Ruiz,* 54 M.J. 138 (C.A.A.F. 2000); *Cousins*, 35 M.J. at 75.

Given the uncertainty in the meaning of the conversation, we find that even if appellate defense counsel's current interpretation of the doorway confrontation is correct, such an interpretation was not obvious. That is, even assuming the conversation had the meaning that appellant now argues, that meaning was not plain and obvious, and therefore any error did not amount to plain error.

Moreover, even assuming the statement "I thought she was joking" was clearly and obviously "some evidence" that appellant honestly believed PFC BJH had consented to the sexual act, there was no evidence that such a belief was reasonable.[12] That is, appellant would only be satisfying one element of the defense.

The only testimonial evidence concerning the assault was that of PFC BJH. According to her testimony on direct examination, as she was changing into her uniform, appellant stated "You don't need to put those pants on" and then grabbed her pants so that she couldn't pull them up, and prevented her from buckling her belt. Appellant then "picked me up[,] he walked me over to the bed and he dropped me down." After obtaining the dildo from her nightstand, appellant then proceeded to pin her arms down with one hand and inserted the dildo in PFC BJH's vagina while she "kept telling him to stop." Under cross-examination, the testimony was even less indicative of consent. Private First Class BJH testified that she was yelling and screaming for appellant to stop. In short, there was no evidence whatsoever which would allow the panel to find appellant made a reasonable mistake as to consent.

---

[12] Appellant mistakenly argues to this court that based on his mistaken belief alone, the military judge was required to give the mistake of fact instruction. This is a correct statement of law only when the accused's mistake is to an element that involves premeditation, specific intent, willfulness, or knowledge of a particular fact. R.C.M. 916(j)(1).

11

Additionally, we note the entire defense case was directed not at claiming that the sexual act was consensual (or that appellant mistakenly believed it to be so). Rather, the overwhelming thrust of the defense case was that the sexual act never happened at all. In opening statement, the defense counsel asked the panel to question the DNA evidence and noted that there were no fingerprints showing that appellant had been in PFC BJH's room. Consistent with their opening, and the defense's careful cross-examination of the government's DNA expert, the defense argued in closing that under the DNA test performed, there were thousands or millions of persons in the world who may have contributed the DNA that the government asserted belonged to appellant. With regards to the single sperm found on PFC BJH's fatigue pants, the defense argued that "the only reasonable conclusion was that someone else provided the sample of sperm." In short, the defense case was not one of mixed messages or a false accusation after consensual sex; the defense argued that there was no sexual act at all.

Reviewing the record and even assuming error, we find that any error was not obvious or clear. Given that the evidence possibly supporting a mistake of fact instruction was limited to one confusing hallway confrontation of questionable meaning and that such an instruction would have been contrary to the defense's theory of the case, any error had no impact on the deliberations of the panel.

We note that appellant asserts that the error has "constitutional implications" and we must test the error to determine whether it is harmless beyond a reasonable doubt. *See United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (citing *Chapman v. California,* 386 U.S. 18, 24 (1967)). We disagree.

To find instructional error of a constitutional dimension, our court would have to find "'a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire,* 502 U.S. 62, 72 (1991) (quoting *Boyde v. California,* 494 U.S. 370, 380 (1990)); *United States v. Barnes*, 74 M.J. 692, 698 (Army Ct. Crim. App. 2015), *review denied*, 74 M.J. __, 2015 CAAF LEXIS 641 (C.A.A.F. 28 Jul. 2015).

Even assuming error in this case, we do not see it to be of a constitutional dimension. The absence of a mistake of fact instruction did not prevent the defense from putting on a defense or place the burden on appellant to prove his innocence. Not every instructional error is of a constitutional dimension. *See, e.g.*, *United States v. Cowan*, 42 M.J. 475, 478 (C.A.A.F. 1995). For example, in the case appellant points us to, *United States v. Wolford*, 62 M.J. 418 (C.A.A.F. 2006), the instructional issue was centered on the First Amendment limits to child pornography. No such constitutional issue is at play in this case.

We note that, on occasion, a court may test to see that any error was harmless beyond a reasonable doubt as it subsumes a plain error analysis. For instance, in *United States v. Davis*, our superior court noted:

> The granted issue discussed the military judge's error in terms of harmlessness beyond a reasonable doubt, and the Government did not contest the application of this standard or argue that plain error review should apply. Therefore, as neither party raised the issue, *and the outcome in this case would be the same under either standard of review*, we will not address whether harmlessness beyond a reasonable doubt or plain error is the appropriate standard to apply.

73 M.J. 268, 271 n.4 (C.A.A.F. 2014) (emphasis added).

Accordingly, even were we to test to see if any error was harmless beyond a reasonable doubt, we would so find.

### B. Factual Sufficiency

In his second assigned error, appellant asks us to set aside his conviction as factually insufficient. *See* Article 66(c). Specifically, appellant claims the conviction cannot stand because of the incredulous nature of PFC BGH's testimony.

Article 66(c), UCMJ, provides that this court may "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact." When exercising this authority, this court does not give deference to the *decisions* of the trial court (such as a finding of guilty). *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (A court of criminal appeals gives "no deference to the decision of the trial court" except for the "admonition . . . to take into account the fact that the trial court saw and heard the witnesses"). The evidence against appellant came both from the emotion-laden testimony of PFC BJH as well as scientific testimony by professional and expert witnesses. We note that the degree to which we "recognize" or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witness is at issue.

In this case, we find the testimony of PFC BJH as to the offense in question to be credible. While trial defense counsel did vigorously attack the credibility of PFC BJH, she made an immediate outcry to her girlfriend, SPC BH. Private First Class BJH's allegation as to this offense was subsequently supported by DNA analysis, an outcome she could not have expected and relied upon if she were making up the

13

assault out of whole cloth. While PFC BJH was at times contradictory, the contradictions were ancillary to the offense in question.[13]

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Chief Judge WILSON, Chief Judge GLANVILLE, Senior Judge MULLIGAN, Senior Judge HAIGHT, Judge HERRING, Judge CELTNIEKS, and Judge BURTON concur.

PENLAND, Judge, with whom Senior Judge TOZZI and Judge CAMPANELLA join, concurring in part and concurring in the result:

I concur with the majority opinion, including its conclusion that the correct standards of review in this case are *de novo* and plain error. However, I disagree with a significant portion of the majority's supporting analysis regarding the path to the plain error standard.

We review *de novo* the adequacy of a military judge's instructions to the factfinder. *United States v. Stanley*, 71 M.J. 60, 62 (C.A.A.F. 2012). Article 51 of the UCMJ requires a military judge to instruct a panel on, *inter alia*, any defenses which the evidence reasonably raises. *United States v. Taylor*, 26 M.J. 127, 129 (C.M.A. 1988). "Where there is no waiver, and in the absence of an objection, we test the instructions provided by the military judge for plain error based on the law at the time of appeal." *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011) (citing *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008)). These principles describe the correct appellate perspective to review this instructional dispute; in other words, forfeiture is not a prerequisite to plain error review.

Considering *Taylor* and the considerable line of cases following it, I must therefore depart from the majority's holding that an appellant may forfeit such an instruction by not requesting it or objecting to its omission. No case cited in the majority's opinion so holds. Assuming *arguendo* that a discussion of forfeiture is required, we should hold that an appellant does not forfeit the benefit of this instruction by failing to request it or failing to object to a list of instructions which omits it. To hold otherwise contravenes *stare decisis* and deprives this statutory

---

[13] Appellant points us to PFC BJH's opinion that she doesn't drink a lot being contradicted by contrary testimony and the photo of her room which includes a case of beer and a wine bottle.

right of its *sua sponte*[14] nature which our superior court has emphasized multiple times. *Taylor*, 26 M.J. 127; *United States v. Brown*, 43 M.J. 187, 190 (C.A.A.F. 1995); *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000); *Stanley*, 71 M.J. at 63[15]; *United States v. Payne*, 73 M.J. 19, 24 (2014); *United States v. MacDonald*, 73 M.J. 426, 435 (C.A.A.F. 2014); *United States v. Davis*, 73 M.J. 268, 272 (2014).

Lest readers interpret this concurrence as a pedantic treatment of something that does not matter—after all, I agree with the ultimate standards of review here—I hasten to emphasize the reason for my concern regarding the expansion of forfeiture. With today's opinion, the majority reduces a trial judge's burden to correctly instruct a fact finder on fundamental matters of law applicable to a case. This development increases the risk of unreliable results.

Notwithstanding our divergence of opinion regarding forfeiture, I fully agree with the majority's conclusion that appellant was not entitled to the instruction as a matter of law. Appellant's statement—"I thought she was joking until I saw her crying."—made under the circumstances which the majority describes, did not amount to "some evidence of an honest and reasonable mistake to which the members could have attached credit if they had so desired." *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F. 2003). For this reason, I concur in the result.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[14] Sua sponte – "Of his or its own will or motion; voluntarily; without prompting or suggestion." *Black's Law Dictionary* 1277 (5th ed. 1979).

[15] According to *Stanley*, "waiver does not apply to '"required instructions' such as . . . affirmative defenses[.]'" *Stanley*, 71 M.J. 63 (quoting *Davis*, 53 M.J. at 205 (quoting *Taylor*, 26 M.J. at 128)). It follows that forfeiture is similarly inapplicable. *But see Payne*, 73 M.J. at 23, "treat[ing] as waived" an instructional error where defense counsel "refus[ed] to assist the military judge in correcting any alleged instructional error at the trial level."