# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist SALVADOR JIMENEZ-VICTORIA**
**United States Army, Appellant**

ARMY 20140733

Headquarters, United States Army Maneuver Center of Excellence
Charles A. Kuhfahl, Jr., Military Judge
Colonel Charles C. Poché, Staff Judge Advocate (pretrial and recommendation)
Lieutenant Colonel John M. McCabe, Acting Staff Judge Advocate (addendum)

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Amanda R. McNeil Williams, JA (on brief); Major Christopher D. Coleman, JA; Captain Amanda R. McNeil Williams, JA (on reply brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Steven J. Collins, JA; Lieutenant Colonel John C. Lynch, JA (on brief).

16 September 2016

---------------------------------
OPINION OF THE COURT
---------------------------------

CAMPANELLA, Senior Judge:

This is a case in which we find, after a fresh, impartial look at the evidence, and giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses, that the evidence supporting appellant's conviction for sexual assault and abusive sexual contact is both factually and legally sufficient.

A military judge, sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification each of sexual assault by causing bodily harm and abusive sexual contact by causing bodily harm in violation of Article 120,

Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [hereinafter UCMJ].[1] The military judge sentenced appellant to a bad-conduct discharge and confinement for eighteen months, a sentence approved by the convening authority.

Appellant's case is before us for review pursuant to Article 66(c), UCMJ. Appellant assigns two errors, one of which merits discussion but no relief. Appellant submits that the convictions for sexual assault and abusive sexual contact are factually insufficient. We disagree. The matters raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), though considered, lack merit.[2]

---

[1] Appellant was found not guilty of sexual assault by penetrating Private First Class (PFC) AH's vulva with his penis when he knew or reasonably should have known she was asleep, and of abusive sexual contact by touching PFC AH's breast with his hand when he knew or reasonably should have known she was asleep, in violation of Article 120, UCMJ.

[2] In supplemental matters submitted pursuant to *United States v. Grostefon*, 12 M.J. 341 (C.M.A. 1982), appellant personally asserts the military judge, during a post-trial "bridging the gap" session with trial counsel and defense counsel, commented on deliberative aspects of the case–specifically, appellant's and PFC AH's testimony at trial. Appellant alleges the military judge stated appellant appeared "too rehearsed and contrived" on direct examination, but was "searching for words" on cross-examination. As for PFC AH, the military judge commented that she was "completely lying" during her victim impact statement during the government's sentencing case. Appellant does not state how he learned of the military judge's comments or provide an affidavit from counsel present at the meeting to illustrate the accuracy of the military judge's comments.

If appellant accurately reported the content of the "bridging the gap" session, the military judge indeed overstepped the bounds of proper feedback in a post-trial session by revealing his deliberate thought process. As the factfinder, it was the military judge's responsibility to weigh the evidence and the credibility of the witnesses in rendering a decision as to the appellant's guilt and an appropriate sentence. He should not have discussed his deliberative process with counsel. While we find no relief would be warranted based on the matters claimed by appellant, this case nonetheless serves as a cautionary note to those military judges who choose to conduct "bridging the gap" sessions. The deliberations of a military judge are privileged. *See* Military Rule of Evidence 509. In promoting confidence in the judiciary, "judges must recognize and safeguard against any affront to the independence of a court, such as . . . invasion of the deliberative process." Army Code of Judicial Conduct for Army Trial and Appellate Judges, r. 1.2 cmt. 4 (16 May 2008). U.S. Army Trial Judiciary Standing Operating Procedures, ch. 11,

(continued. . .)

## BACKGROUND

Appellant was scheduled to move to Fort Bragg, where his friend, PFC AH, was already stationed. One Friday evening before his move, appellant drove to Fort Bragg to visit PFC AH. Appellant met up with PFC AH in the early morning hours on Saturday, spent some time catching up and running errands, and then returned to her barracks where PFC AH allowed appellant to sleep that evening.

On Saturday morning, the two drove together to Myrtle Beach, South Carolina, to enjoy a day at the beach. Appellant paid for the excursion after PFC AH said she had no money. Upon arriving at the beach, they decided to spend the evening there, so appellant rented a hotel room. After changing into beachwear, the two spent the day playing on the beach and around the boardwalk. After dinner, the two returned to the hotel room for the evening.

There were two beds in the hotel room. Private First Class AH got into one bed to sleep while appellant stayed up to finish some work. A short time after falling asleep, PFC AH was awakened by appellant kissing her and touching her breasts. Private First Class AH told appellant to "stop." He apologized but then persisted in attempting to touch her breasts. Private First Class AH told appellant to stop, threatened him with a knife and told him "quit trying to [f***] me." Appellant finally stopped making sexual advances towards her and PFC AH went back to sleep.

Later, PFC AH was awakened a second time to find appellant on top of her between her legs with his penis inside of her vagina. Her attempts to push him off or otherwise stop him were unsuccessful. Appellant ejaculated inside her vagina.

After checking out of the hotel the following morning, appellant and PFC AH drove back to Fort Bragg, stopping along the way for food. Private First Class AH planned to attend a get-together with friends that afternoon. Private First Class AH

(. . . continued)
para. 4(c), (1 Nov. 2013), counsels military judges, in conducting a "bridging the gap" session not to discuss:

> 1) personal impressions of the evidence or arguments presented; 2) the Judge's thought process in ruling on a motion or in arriving at a particular finding or sentence; 3) tactical decisions made by counsel in the course of the trial; 4) witness credibility; 5) factors considered in arriving at findings or sentence; 6) the weight if any given to testimony, documents, argument, or case citations; or 7) other information that would disclose the judge's deliberative process. . . .

stated at trial that in the immediate aftermath of the incident she was confused and was trying to "process everything" that happened. While PFC AH did not confront appellant on the drive back, she did confront him in a text message after appellant dropped her off at her barracks.

Private First Class AH also sent a text message to her friend, SPC SI, indicating that appellant had "pretty much raped her" while at Myrtle Beach - despite her trying to stop him by threatening him with a knife.

Private First Class AH then went to a picnic for a short time, after which she telephoned her ex-boyfriend and explained what happened earlier in the day with appellant. With the encouragement from her ex-boyfriend, she reported the incident to the authorities.

Private First Class AH reported the sexual assault to a non-commissioned officer (NCO). That NCO, in turn, called Staff Sergeant (SSG) QR, a female NCO, to assist PFC AH. Staff Sergeant QR found PFC AH distraught in her barracks room. SSG QR accompanied PFC AH to the hospital where appellant underwent a rape examination.

After PFC AH provided a sworn statement to CID, investigators asked her to place a pretext phone call to appellant in hopes of soliciting an incriminating statement about the incident. During this phone call appellant said he thought PFC AH was awake during the sexual encounter. In response to PFC AH asking why appellant tried again to have sex with her, appellant responded "I like you [AH]." When she asked him why he would do something like that, he responded "I didn't mean to hurt you. I want to be your friend."

At trial, appellant testified the sex with PFC AH was consensual and that PFC AH was awake.

## LAW AND ANALYSIS

Article 66(c), UCMJ, provides:

> In each case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

Accordingly, this court has an independent duty to review the record and determine whether it is correct in law *and* fact. UCMJ art. 66(c).

The test for legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, (1979); *see also United States v. Phillips,* 70 M.J. 161, 166 (C.A.A.F. 2011). The test for factual sufficiency, on the other hand, "involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002). The latter determination is unique to the military justice system, as it requires this court to review the record de novo. *United States v. Nerad*, 69 M.J. 138, 141 n.1 (2010). This court has noted that "the degree to which we 'recognize' or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witnesses is at issue." *United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015) (en banc).

In reviewing for factual sufficiency we are limited to the facts introduced at trial and considered by the court-martial. *United States v. Beatty*, 64 M.J. 456 (C.A.A.F. 2007). We may affirm a conviction only if we conclude, as a matter of factual sufficiency, that the evidence proves appellant's guilt beyond a reasonable doubt. *United States v. Sills,* 56 M.J. 239, 240–41 (C.A.A.F. 2002); *United States v. Turner,* 25 M.J. 324, 324–25 (C.M.A. 1987).

Our superior court does not share either our factual review authority or responsibility. *Compare* Article 66 *with* Article 67, UCMJ. Nonetheless, our decisions are subject to review by the CAAF. *United States v. Nerad*, 69 M.J. 138, 140 (C.A.A.F. 2010) ("[W]hile CCAs have broad authority under Article 66(c), UCMJ, to disapprove a finding, that authority is not unfettered. It must be exercised in the context of legal—not equitable—standards, subject to appellate review."). This court reviews the entire record of a trial anew, which includes the evidence presented by the parties and the findings of guilt.

This case turns on the factfinder's and our credibility determinations of both the appellant and the victim. After taking into account that the finder of fact saw and heard the witnesses, we find the testimony of the victim combined with other evidence, proves appellant's guilt beyond a reasonable doubt. Weighing in favor of appellant's guilt, we note: the evidence of PFC AH's immediate confrontation of appellant via text message after he dropped her off at the barracks; her immediate report to her ex-boyfriend and to SPC SI; her immediate report to NCOs and law enforcement; her undergoing a rape examination; and the key statements by appellant during the pretext phone call.

5

Having reviewed the entire record, we are convinced beyond a reasonable doubt that appellant committed the offenses of which he stands convicted.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judge HERRING and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court