IN THE CASE OF


UNITED STATES, Appellee

v.

Bobby HIBBARD, Chief Master Sergeant
U.S. Air Force, Appellant

No. 02-0231

Crim. App. No. 34371

United States Court of Appeals for the Armed Forces

Argued November 5, 2002

Decided February 6, 2003

EFFRON, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE, BAKER, and ERDMANN, JJ., joined.


Counsel


For Appellant:  Lieutenant Colonel Robin S. Wink (argued); Lieutenant Colonel
    Beverly B. Knott, Major Patricia A. McHugh, and Major Jeffrey A. Vires
    (on brief).



For Appellee:  Lieutenant Colonel LeEllen Coacher (argued); Lieutenant
    Colonel Lance B. Sigmon and Major Jennifer R. Rider (on brief).



Military Judge:  Michael J. Rollinger


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification each of maltreatment, rape, indecent assault, and making a false official statement, and two specifications alleging dereliction of duty, in violation of Articles 93, 120, 134, 107 and 92, Uniform Code of Military Justice [hereinafter UCMJ] 10 USC §§ 893, 920, 934, 907, and 892 (2002), respectively.  He was sentenced to confinement for four years and reduction to pay grade E-4.  The convening authority approved the findings and approved a sentence of confinement for two years and reduction to pay grade E-4.  The Court of Criminal Appeals affirmed in an unpublished opinion.

On Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN REFUSING
> TO INSTRUCT THE MEMBERS ON THE DEFENSE OF
> MISTAKE OF FACT AS TO THE COMPLAINANT'S
> CONSENT AS RELATED TO THE OFFENSE OF RAPE IN
> THE SPECIFICATION OF CHARGE II.

For the reasons stated below, we hold that the military judge did not err when he declined to instruct the panel of members on the defense of mistake of fact.

## I.   BACKGROUND

### A.   The Mistake of Fact Defense

When an accused is charged with a crime in which knowledge or intent is material as to an element, "it is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would be not guilty of the offense."  Rule for Courts-Martial 916(j) [hereinafter R.C.M.].  If the accused is charged with a general intent offense such as rape, "the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances."  Id.

Rape is a general intent offense requiring proof that an accused deliberately or purposefully committed an act of sexual intercourse by force and without the victim's consent.  See Article 120(a); Manual for Courts-Martial, United States (2002 ed.) Part IV, para. 45.b.(1) [hereinafter MCM]; United States v. Willis, 41 M.J. 435, 437 (C.A.A.F. 1995).  "[A]n honest and reasonable mistake of fact as to the victim's lack of consent" is an affirmative defense to a charge of rape.  United States v. True, 41 M.J. 424, 426 (C.A.A.F. 1995)(quoting United States v. Taylor, 26 M.J. 127, 128 (C.M.A. 1988)).

The military judge is required to instruct the court-martial panel on the availability and legal requirements of an affirmative defense, if "the record contains some evidence to which the military jury may attach credit if it so desires." United States v. Brown, 43 M.J. 187, 189 (C.A.A.F. 1995) (quoting United States v. Simmelkjaer, 18 C.M.A. 406, 410, 40 C.M.R. 118, 122 (1969)). See R.C.M. 920(e)(3); United States v. Davis, 53 M.J. 202, 205 (C.A.A.F. 2000). An affirmative defense "may be raised by evidence presented by the defense, the prosecution, or the court-martial." R.C.M. 916(b) discussion.

The defense theory at trial and the nature of the evidence presented by the defense are factors that may be considered in determining whether the accused is entitled to a mistake of fact instruction, but neither factor is dispositive. See United States v. Jones, 49 M.J. 85, 91 (C.A.A.F. 1998); Taylor, 26 M.J. at 131. "Any doubt whether an instruction `should be given should be resolved in favor of the accused.´" Brown, 43 M.J. at 189 (quoting United States v. Steinruck, 11 M.J. 322, 324 (C.M.A. 1981)).

## B.  Appellant's Trial

Appellant was prosecuted for a number of offenses, including a charge that he raped Technical Sergeant (TSgt) W while both were stationed in Saudi Arabia at Eskan Village.

4

Appellant's defense at trial was that he did not engage in sexual intercourse with TSgt W.

### 1.   Defense Counsel's Opening Statement

The central theme of defense counsel's opening statement was that Appellant did not engage in an act of sexual intercourse with TSgt W.  In support of this approach, defense counsel suggested the evidence would show that TSgt W had fabricated the rape charge.  According to defense counsel, TSgt W wanted a transfer from Saudi Arabia to the United States.  The apparent implication was that she would receive more sympathetic consideration as a rape victim.  Defense counsel indicated the evidence would show that TSgt W had not wanted to leave her family in Little Rock, Arkansas, where she had been stationed for sixteen years, and that she decided to accuse Appellant of rape after Staff Sergeant (SSgt) S told her about inappropriate sexual advances by Appellant.  Defense counsel suggested the evidence would show that TSgt W's motive to fabricate and the lack of medical evidence would prove that no sexual intercourse occurred.

### 2.   The Victim's Testimony

TSGT W was the prosecution's primary witness.  She provided the following testimony about her interaction with Appellant – who was her first sergeant – in the brief period between her

arrival at Eskan Village and the incident leading to the rape charge.

During the two days following her arrival, Appellant provided TSGT W with an orientation – showing her around the base, including her in social functions, and introducing her to other Air Force personnel.  In the course of these activities, Appellant pointed out a private swimming pool, indicating that he was allowed to bring one guest to the pool. He told her not to tell anyone else about it.

In the afternoon of her third day at the base, Appellant called TSgt W into his office on four different occasions, asking her each time to accompany him to the private pool that night.  Although TSgt W repeatedly attempted to avoid giving a direct answer, Appellant pressed her to join him, and she eventually agreed to do so.  That evening, Appellant met TSgt W at her room, telling her that they would first go to his apartment so that he could change into his swimsuit.  At the apartment, Appellant asked TSgt W to enter his room.  Because she was reluctant to be alone with him, she declined to do so, and remained in the hallway while he changed.

When they arrived at the private pool, no one else was present.  TSgt W hesitated because she did not want to be alone with Appellant, but she was also concerned about acting in a manner that would be perceived as insulting to her first

sergeant.  After Appellant prodded her, she eventually went into the pool area, and they both entered the pool.  At the time she entered the pool, she was wearing shorts over her swimsuit. After the pockets filled with water, causing discomfort, she removed the shorts that covered her swimsuit.  Over the period of about an hour, Appellant and TSgt W swam and talked, spending time in both the pool and a nearby hot tub.

While in the hot tub, Appellant asked TSgt W if she trusted him.  She replied that she did.  He began to rub her feet.  A few seconds later, Appellant let go of her feet, stood up, and "came at" her -- touching her breasts, buttocks, thighs, and back.  After trying to kiss her, he pulled aside her swimsuit and inserted his finger into her vagina.  According to TSgt W, this initial contact lasted "a couple of seconds," leaving her in shock, unable to move or speak.

Appellant then left the hot tub and spread out a towel on the deck.  TSgt W told Appellant, "I can't do this."  She next found herself on her back on the towel, but could not recall the details of moving from the hot tub to the towel.  Appellant pulled down his swim trunks and "came down on [her] really fast," leaving her able to move only her upper chest area and head.  She struggled to turn her head back and forth to avoid Appellant's attempts to kiss her, which led him to say, "come

on, kiss me." Appellant then inserted his penis into TSgt W's vagina.

TSgt W, who began to cry "really hard," had difficulty breathing. Appellant asked TSgt W if she wanted him to stop, and she nodded an affirmative response. It is unclear whether he saw her response, but he did not stop. When she realized that he was not stopping, she began to cry "even harder." He again asked if she wanted him to stop, and TSgt W was able to say that she wanted him to stop. Appellant then ended the act of sexual intercourse.

After terminating the sexual activity, Appellant said: "You are a beautiful woman and we are both adults." He asked her to come back to his room with him. She refused. He said that he wanted to get to know her better, and that she should "just let what comes natural happen" next time. He also said that she need not worry because he had undergone a vasectomy. As they were preparing to leave, he added: "Well, at least this was consensual."

### 3. Defense Counsel's Cross-Examination of the Victim

The cross-examination of TSgt W by defense counsel emphasized the defense contention that Appellant did not engage in sexual intercourse with TSgt W. Defense counsel highlighted inconsistencies between TSgt W's testimony at trial and prior

statements she made to investigating authorities. In addition, defense counsel explored TSgt W's unhappiness with having to leave her family. Defense counsel did not ask any questions on cross-examination to explore or highlight a mistake of fact defense.

## 4. The Defense Case

The defense case on the merits sought to bolster the proposition that Appellant did not engage in sexual intercourse with TSgt W. Appellant did not seek to establish a mistake of fact defense. Defense counsel submitted twenty-three affidavits and multiple witnesses attesting to Appellant's good military character, his law-abiding nature, and his character for truthfulness. A fellow first sergeant testified that Appellant's public interaction with TSgt W was neither inappropriate or unusual. Defense counsel attempted to discredit SSgt S's allegations of inappropriate sexual advances by Appellant. Defense counsel also introduced evidence that a guard walked past Appellant and TSgt W while they were in the hot tub, and that they had exchanged greetings. Appellant did not testify, and the defense did not present any other evidence of a mistake of fact defense during its case-in-chief.

#### 5. The Request for Instructions and Defense Counsel's Closing Argument

Prior to closing arguments, defense counsel moved for a mistake of fact instruction. Defense counsel's argument in favor of the instruction addressed TSgt W's remarks and actions towards Appellant, suggesting that the record was unclear as to whether TSgt W "communicated her non-desire" to Appellant. Defense counsel did not cite or rely upon that aspect of TSgt W's testimony stating that after the act was completed, Appellant said: "Well, at least this was consensual." Likewise, defense counsel did not contend that TSgt W affirmatively had indicated a desire to engage in sexual intercourse. The military judge denied the motion, taking note of TSgt W's testimony that Appellant had rushed toward her, pinned her down, left her in a state of shock, and did not ask if she wanted him to desist until after the act of penetration. The military judge, observing that the mistake of fact defense requires both an honest and a reasonable belief, held that there was not enough evidence to warrant an instruction. He specifically relied upon TSgt W's description of the incident and the defense theory of the case, which he described as "blanket denials of any kind of contact whatsoever[.]"

Defense counsel's closing argument concentrated on the defense theory that Appellant had not engaged in sexual

intercourse with TSgt W. Counsel did not ask the members to consider that Appellant might have mistakenly believed that TSgt W consented to sexual intercourse, but simply took note of the Government's burden to prove "lack of consent" and contended that the Government could not do so beyond a reasonable doubt.

## II. Discussion

The issue of whether a jury was properly instructed is a question of law, which we review de novo. United States v. McDonald, 57 M.J. 18, 20 (C.A.A.F. 2002). Even if not requested by the defense, a military judge has a sua sponte duty to give certain instructions when reasonably raised by the evidence, including a defense instruction as to the affirmative mistake of fact defense. See id.; R.C.M. 920(e).

In the present case, the military judge concluded, as a matter of law, that there was insufficient evidence of a reasonable and honest belief to require a mistake of fact instruction. The Court of Criminal Appeals suggested there was some evidence that Appellant had an honest belief as to consent. The court observed, however, that it was "difficult . . . to imagine any court members attaching any credit" to the evidence. United States v. Hibbard, No. ACM 34371, slip Op. at 5 (A.F. Ct. Crim. App. Nov. 29, 2001). The court concluded, as a matter of law, that there was insufficient evidence of a reasonable belief

11

to require an instruction. Id. For the reasons set forth below, it is appropriate to focus on the point of agreement between the military judge and the Court of Criminal Appeals – that the evidence did not reasonably raise the issue of whether Appellant had a reasonable but mistaken belief as to consent. Because we conclude that the military judge did not err in this regard, we need not address aspects of the ruling by the military judge or the opinion by the court below citing other reasons for declining to give the instruction.

On appeal, Appellant suggests that the following factors support a mistake of fact instruction: (1) TSgt W willingly accepted Appellant's invitation to join him at night in a private swimming pool; (2) she accepted a foot rub from Appellant; (3) when Appellant engaged in sexual touching, she did not tell him that she wanted him to stop; (4) they both got out of the tub and laid down on a towel and had sexual intercourse; (5) during intercourse, Appellant received "mixed signals" in the form of heavy breathing and crying; and (6) when he asked her after penetration if she wanted him to stop, he may not have perceived her first response, but when he asked again and she said "Yes" he stopped. In addition, as noted by the Court of Criminal Appeals, at the end of the incident appellant said, "Well, at least this was consensual." Id.

The test for determining whether an affirmative defense of mistake of fact has been raised is whether the record contains some evidence of an honest and reasonable mistake to which the members could have attached credit if they had so desired. R.C.M. 916(j); Davis, 53 M.J. at 205. In the present case, as noted above, our focus is limited to the "reasonable mistake" prong of the test. Therefore, in determining whether the factors cited by Appellant reasonably raised the defense of mistake of fact, we consider whether the record contains some evidence of a reasonable mistake to which the members could have attached credit if they had so desired. In doing so, we consider the totality of the circumstances at the time of the offense. Key circumstances in this case include: (1) the fact that Appellant had a supervisory relationship with TSGT W, and a responsibility to orient her to her new duty station; (2) his use of the official duty environment to press her to join him at the swimming pool that evening; (3) her manifest discomfort, as reflected in her repeated efforts to avoid his invitation to join him in the swimming pool, her unwillingness to enter his apartment, and her hesitancy to enter the pool until prodded by him; (4) his insistence that she respond to a question about trust as a predicate for giving her a foot rub; (5) his sudden rush at her, followed by aggressive sexual touching; (6) her statement that this put her in a state of shock; (7) the absence

13

of any evidence that she responded positively to his aggressive sexual touching; (8) her repeated attempts to avoid his kisses; and (9) his use of his body weight to restrict her upper body movements.

In our consideration of whether a mistake of fact instruction is required, we take into account the manner in which the issue was litigated as well as the material introduced into evidence at trial. See, e.g., United States v. Peel, 29 M.J. 235 (C.M.A. 1989).

As noted by the military judge in the present case, defense counsel concentrated throughout the trial on the theory that Appellant had not engaged in sexual intercourse with TSgt W. Defense counsel steadfastly adhered to the theory of no sexual intercourse in his opening statement, during his cross-examination of TSgt W, in the presentation of defense evidence, and in his closing argument.

With respect to cross-examination, defense counsel's approach to the prosecution's key witness, TSgt W, is informative – particularly because Appellant, at trial and on appeal, has relied on her testimony as the basis for the instruction. At best, TSGT W's testimony described a situation that the defense might have explored in greater detail to reasonably raise a mistake of fact. Such an approach, however, would have entailed an element of risk, because the cross-

examination might have produced testimony that more firmly demonstrated an absence of consent. The fact that such an approach would have been risky, however, does not mean that the defense could leave the details unexplored and then expect to receive a mistake of fact instruction. Without such exploration, TSGT W's testimony did not describe a situation that reasonably raised a mistake of fact as to her willingness to engage in sexual intercourse.

In the present case, defense counsel made no attempt on cross-examination of TSgt W to explore and develop grounds for a mistake of fact. Instead, counsel used cross-examination to highlight inconsistencies and establish motive in an attempt to bolster his own theory that no sexual intercourse occurred. See Jones, 49 M.J. at 90.

Although it is not necessary to present evidence of a mistake of fact in the defense case on the merits or to discuss such evidence in closing argument in order to obtain an instruction in a proper case, see, e.g., United States v. Sellers, 33 M.J. 364, 368 (C.M.A. 1991), it is appropriate for an appellate court to take into account the absence of such a presentation in assessing the significance of the evidence. We note that TSgt W's testimony regarding Appellant's remark -- "Well, at least this was consensual" - was treated at trial as an isolated remark unconnected to specific evidence of

Appellant's understanding or intent.  Defense counsel did not seek to connect it to any other evidence at trial, nor did defense counsel seek through argument to suggest that the case involved sexual intercourse which Appellant believed to be consensual.  Although the defense presentation at trial is not dispositive in determining what affirmative defenses have been reasonably raised by the evidence, we may take into account the absence of a mistake of fact approach from the defense case when considering evidence such as TSGT W's testimony about Appellant's parting remark.  See Taylor, 26 M.J. at 131.  In that context, Appellant's cursory parting remark  -- that "at least" the act was consensual -- need not be viewed as anything more than an after-the-fact attempt to recast unpleasant circumstances in a favorable light.  Cf. United States v. Buckley, 35 M.J. 262 (C.M.A. 1992)(appellant's remark to victim that he thought she was awake did not raise mistake of fact as to consent).

In summary, the evidence cited by the defense in light of the totality of the circumstances, including the manner that the issue was litigated at trial, was insufficient to reasonably raise the issue of whether Appellant had a reasonable belief that TSgt W consented to sexual intercourse.

## III. <u>Conclusion</u>

The decision of the United States Air Force Court of Criminal Appeals is affirmed.