# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.Y. MARKS**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**JOSE D. DOMINGO**
**SENIOR CHIEF ELECTRICIAN'S MATE (E-8), U.S. NAVY**

**NMCCA 201400408**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 8 July 2014.
**Military Judge:** CAPT B.L. Payton-O'Brien, JAGC, USN.
**Convening Authority:** Commander, Navy Region Southwest, San Diego, CA.
**Staff Judge Advocate's Recommendation:** CDR D.J. Jones, JAGC, USN; **Addendum:** LCDR J.E. Dowling, JAGC, USN.
**For Appellant:** LT Christopher C. McMahon, JAGC, USN.
**For Appellee:** Capt Cory A. Carver, USMC; LT Amy Freyermuth, JAGC, USN.

**29 December 2015**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

HOLIFIELD, Judge:

A general court-martial consisting of officer members convicted the appellant, contrary to his pleas, of one specification each of aggravated sexual assault, abusive sexual contact, and adultery, in violation of Articles 120 and 134,

Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934.[1]  The members sentenced the appellant to confinement for eight years and a dishonorable discharge.  The convening authority approved the sentence as adjudged and, except for the discharge, ordered it executed.

The appellant alleges four assignments of error (AOE).  First, that the military judge committed reversible error when she denied the appellant's request for an instruction on mistake of fact as to consent.  Second, that trial counsel's improper arguments compounded the military judge's instructional error and deprived the appellant of a fair trial.  Third, that the evidence admitted at trial was legally and factually insufficient to support convictions of the Article 120, UCMJ, offenses.  And, fourth, that the military judge erred in excluding letters and text messages from the victim to the appellant and his wife.[2]  We find merit in the first AOE and will provide a remedy in our decretal paragraph.

**Background**

Personnel Specialist Third Class (PS3) FF[3] and her family moved from the Philippines to the United States in 2010.  In December of that year, PS3 FF and her sister moved to San Diego, California to live with the appellant (their biological uncle), his wife, and their two sons.  The two young women lived with the appellant and his family for approximately six months until they moved into their own apartment a few blocks from the appellant's home.

Starting in the fall of 2011, when PS3 FF was 17 years old, and continuing until the following summer, the appellant and PS3 FF had a number of sexual encounters, including both vaginal and oral sex.  Their descriptions of these events are quite different.  PS3 FF testified that she did not want to participate in sexual activity with the appellant, while the appellant testified that they were having a fully consensual affair.

---

[1]  The appellant was acquitted of one specification of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928.

[2]  This last assignment of error is raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

[3]  During the period of the alleged offenses, the victim was a civilian.  She subsequently enlisted in the United States Navy and was, at the time of trial, a third class petty officer.  For clarity, she will be referred to as PS3 FF throughout this opinion.

PS3 FF testified that she had initially told the appellant that she did not want to have sex with him, and that, when she said "no" during their first encounter, the appellant stopped. During later incidents when the appellant attempted to have vaginal sex with her, she did not refuse, did not say no, and did not physically attempt to stop him.

PS3 FF testified that when the appellant first requested oral sex, she refused. She stated that appellant then grabbed her head and put his penis in her mouth. For the subsequent incidents of oral sex, however, she stated she neither refused nor otherwise expressed her unwillingness to participate.

Explaining her lack of resistance, PS3 FF stated she was fearful of her uncle and thought that he would become aggressive if she refused. PS3 FF said this fear was rooted in her having observed the appellant forcefully disciplining his children. PS3 FF never outwardly expressed this fear, and there is no evidence indicating the appellant was aware of her fear.

Throughout the period of these sexual encounters, PS3 FF continued to visit the appellant's home, accompany him to run errands alone, and, on at least one occasion, spend the night at the appellant's home while his wife and children were out of town. PS3 FF testified that she did all these things because she did not want to make the appellant's wife suspicious. She stated she was also afraid that, if she reported the assaults, she would either not be believed or would be blamed for causing her aunt to divorce the appellant.

At trial, the appellant testified that PS3 FF willingly participated in their encounters. He stated that she initiated oral sex with him and would often touch his penis while they were driving in his car. He testified that whenever PS3 FF indicated that she was not interested in having sex he would stop. He denied ever forcing her to engage in any sexual activity. The appellant testified that he believed all of the sexual acts were consensual.

After the presentation of evidence, defense counsel requested that the military judge instruct the members on the defense of mistake of fact as to consent. The military judge denied this request, stating:

> I don't believe the evidence has raised the mistake of fact on the part of the accused concerning whether or not the victim consented. The evidence in this case,

3

while I understand that the defense position as you indicated in the 802 is that she didn't say no or didn't resist, your theory--the defense theory, including through your client's own testimony, was that this was a consensual relationship that occurred over a long period of time, not a one-time incident. His testimony was that it was consensual, and even if the cross-examination had her saying it wasn't consensual or it was--there was no "no" said by her, in this court's opinion that does not raise the mistake of fact of--as to consent in this case.[4]

The trial defense counsel responded:

[S]ome evidence has been raised as to mistake of fact as to consent.  The alleged victim testified on the stand that she did not fight back, she didn't say no. Our client testified that he believed she was consenting.  If the members believe her testimony that she didn't fight back, they could fairly believe that she didn't fight back and that [the appellant] believed mistakenly that she was consenting.  Without this instruction--if they believe that, that he mistakenly believed that she was consenting then he should be found not guilty.  Without that instruction, they will not be able to do that.[5]

**Discussion**

"Whether a panel was properly instructed is a question of law reviewed de novo."  *United States v. Stanley*, 71 M.J. 60, 62 (C.A.A.F. 2012) (citation omitted).  "A military judge must instruct members on any affirmative defense that is 'in issue.'" *United States v. Schumacher*, 70 M.J. 387, 389 (C.A.A.F. 2011) (citation omitted).  "[A]n affirmative defense is 'in issue' when some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they chose." *Stanley*, 71 M.J. at 63 (citation and internal quotation marks omitted).

When deciding whether to give a mistake-of-fact instruction, the military judge may consider "[t]he defense theory at trial and the nature of the evidence presented by the defense," although neither is dispositive.  *United States v.*

---

[4] Record at 814.

[5] *Id.* at 814-15.

4

*Hibbard*, 58 M.J. 71, 73 (C.A.A.F. 2003) (citation omitted).
"Any doubt whether an instruction should be given should be resolved in favor of the accused." *Id*. (citations and internal quotation marks omitted).

The affirmative defense of mistake of fact as to consent, found in RULE FOR COURTS-MARTIAL 916(j)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), requires that the "mistake must have existed in the mind of the accused and must have been reasonable under all circumstances." Thus, the question is whether there was some evidence admitted that would support finding that (1) the appellant honestly held the mistaken belief, and (2) the mistake was objectively reasonable. "The test is similar to that for legal sufficiency," in that the military judge must make this determination by viewing the evidence in a light most favorable to the accused. *Schumacher*, 70 M.J. at 390 (citations omitted). When evaluating the reasonableness of any such mistaken belief, we look at "the totality of the circumstances at the time of the offense." *Hibbard*, 58 M.J. at 75.

Accordingly, we begin our analysis by examining whether the defense of mistake of fact was raised at trial—either by the defense theory, the evidence admitted, or both.

*Defense Theory*.

In his opening statement, the civilian defense counsel (CDC) stated the evidence would show that all the sexual activity between the appellant and PS3 FF was consensual, telling the members that "[n]o other explanation will make sense[.]"[6] He then explained the evidence would show that PS3 FF only reported the incidents and claimed they were nonconsensual as part of a scheme to obtain transfer orders to be nearer to her fiancé in Virginia. The CDC in no way indicated there was a possibility that his client was mistaken as to whether PS3 FF consented to the activity. Thus, it appears the defense's theory at the trial's outset was purely one of consent, a fact that supports the military judge's refusal to give the mistake-of-fact instruction.

During its case-in-chief, the defense offered letters sent from PS3 FF to the appellant and his wife purportedly describing how happy PS3 FF was to receive orders to a ship home-ported in San Diego. In arguing for their admission, the CDC said the

---

[6] *Id*. at 319.

letters evidenced PS3 FF's "motive to fabricate the entire case . . . which has been our theory from the start."[7]

In his closing argument, CDC focused solely on whether PS3 FF consented: "She can consent, she could have consented, and she did consent. That's what happened in this case."[8] This arguably provides post hoc support for the military judge's decision on the instruction, as it shows the theory argued by the defense did not include mistake of fact as to consent.

Taken together, it appears the military judge was correct in finding that the sole defense theory was that all the sexual activity was consensual. But weighing against this is the fact the CDC requested a mistake-of-fact instruction. Counsel's request for such an instruction "is indicative of the defense's theory of the case and can be considered by appellate courts as context for whether the entire record contains 'some evidence' that would support the instruction." *United States v. DiPaola*, 67 M.J. 98, 102 (C.A.A.F. 2008) (citation omitted). The CDC's argument to the military judge regarding the requested instruction, *supra*, indicated the intent to do more than simply challenge the factual issue of consent. And we do not know what closing argument the counsel would have made but for the judge's ruling.

With this less than conclusive assessment of the defense theory, we now turn to the evidence admitted at trial.

*Nature of the Evidence.*

The appellant's testimony described a consensual, fully reciprocal romantic relationship between PS3 FF and himself. While there is little evidence in the record that corroborates his testimony,[9] the appellant clearly conveyed that he believed the sexual encounters with PS3 FF were consensual:

---

[7] *Id*. at 785. Although we fail to see how the letters in any way evidence a *motive* to fabricate, this exchange with the military judge is relevant in that it shows that the defense's theory of consent was based, in part, on the assertion that PS3 FF was simply lying regarding her lack of consent.

[8] *Id*. at 869.

[9] The appellant's wife testified that she stumbled upon her husband and PS3 FF "kissing and hugging," and described PS3 FF as "really responding" to the appellant's kisses, as if they were in a "relationship." Record at 775-76.

**CDC:** Do you believe that she was a willing participant?
**Appellant:** Yes, Sir.[10]

**CDC:** On all the occasions or any of the occasions that you had sexual relations with PS3 F., did she ever give you any indication that she was not consenting?
**Appellant:** Never Sir.[11]

**CDC:** And how [did] she talk to you differently [after the initial episodes of kissing and heavy petting]?
**Appellant:** She's sweeter than the last time and . . . you know how you feel like when somebody actually looks for you and talk to you differently.[12]

The appellant did not deny that the sexual acts occurred. In fact, he admitted to more encounters than PS3 FF alleged. But he was adamant in saying he believed all the encounters were consensual. Other than PS3 F's testimony, there is nothing in the record that indicates he did not hold this belief.

Evidence of the appellant's belief was not limited to his own testimony. While questioning the investigator who initially interviewed the appellant, the Government elicited testimony that the appellant "believed [PS3 FF] liked having sex with him . . . it was something he believed."[13] The same witness agreed with the CDC under cross-examination that the appellant "believed that she enjoyed the sex."[14] In anticipation of this testimony, the trial counsel even quoted during his opening statement comments the appellant allegedly made to the investigator. Among these quotes was, "I think she's attracted to me."[15]

Although the members ultimately disbelieved the appellant's version of events, there was more than "some"

---

[10]  Record at 650.

[11]  *Id*. at 655.

[12]  *Id*. at 679.

[13]  *Id*. at 498.

[14]  *Id*. at 544.

[15]  *Id*. at 317.

evidence presented indicating the appellant honestly believed PS3 FF consented. The next question, then, is whether there was some evidence that this belief was reasonable.

Under cross-examination, PS3 FF admitted the following:

a. the appellant never threatened her, hurt her, or was angry with her;

b. the two times PS3 FF said "no" to the appellant, they did not have sex;

c. on the occasions when sexual intercourse occurred, she did nothing to indicate she was not consenting;

d. she continued to accompany the appellant alone on various errands; and,

e. she continued to visit the appellant's home several times each week during the period in which the alleged sexual assaults were occurring.

We find that this testimony, along with the appellant's statements that PS3 FF continued to act in a friendly manner towards him, constitutes "'some evidence' of a mistake of fact that the panel could attach credit to if it so desired." *DiPaola*, 67 M.J. at 102. And we find no corroborative or undisputed evidence in the record that makes such a mistaken belief by the appellant objectively unreasonable.[16]

As we find some evidence that the appellant actually believed PS3 FF consented to the sexual acts and that the members could have found such a belief was reasonable under the circumstances, we conclude that the military judge erred in denying the requested instruction. We now test for prejudice.

*Prejudice.*

The Court of Appeals for the Armed Forces has applied the following test to a military judge's failure to provide a required mistake-of-fact instruction:

Once it is determined that a specific instruction [was] required but not given, the test for determining

---

[16] Although the incestuous nature of the sexual acts shocks this Court, this fact alone does not make it unreasonable for the appellant to have believed that PS3 FF consented to the acts.

whether this constitutional error was harmless is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Stated differently, the test is: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Neder v. United States*, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

*DiPaola* at 102 (quoting *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002)).

The evidence of guilt in this case was far from overwhelming. PS3 FF's testimony was remarkable for her lack of memory regarding key details. The members were presented with little corroborative evidence to support one version of events over the other.

The Government's theory was that all of the sexual activity between the appellant and PS3 FF was nonconsensual, while the defense argued that all the activity was done with PS3 FF's full consent. The evidence at trial, however, offered a third option upon which the members could have based a verdict—that PS3 FF did not consent, but the appellant reasonably believed she did. As the military judge's refusal to instruct the members that this third possibility constituted a defense, we cannot say this error was harmless beyond a reasonable doubt.

## Conclusion

The findings for Specifications 1 and 2 of Charge I and the sentence are set aside. The remaining findings are affirmed. The record is returned to the Judge Advocate General for remand to an appropriate convening authority with a rehearing authorized.

Senior Judge BRUBAKER and Judge MARKS concur.

For the Court

R.H. TROIDL
Clerk of Court

