# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40746**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Tylir D. CUNNINGHAM**
Airman Basic (E-1), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 24 April 2026

———————————

*Military Judges*: Julie L. Pitvorec (pre-trial motion); Matthew McCall (arraignment); Adam D. Bentz (trial).

*Sentence*: Sentence adjudged on 7 May 2024 by GCM convened at Goodfellow Air Force Base, Texas. Sentence entered by military judge on 20 January 2024: Dishonorable discharge and confinement for 30 months.

*For Appellant*: Major Jordan L. Grande, USAF.

*For Appellee*: Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Heather R. Bezold, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before GRUEN, KEARLEY, and MORGAN, *Appellate Military Judges*.

Senior Judge GRUEN delivered the opinion of the court,[1] in which Judge KEARLEY and Judge MORGAN joined.

———————————

[1] Ms. Gabrielle Esquer, an extern assigned to the court under the Air Force Internship/Externship Program and supervised by an attorney admitted to practice before this court, participated in the preparation of this opinion with Senior Judge Gruen.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

GRUEN, Senior Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of one specification of absence without leave (Charge I), in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886, and one specification of negligent dereliction of duty (Charge II), in violation of Article 92, UCMJ, 10 U.S.C. § 892.[2] The general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of sexual assault (Charge III), in violation of Article 120, UCMJ, 10 U.S.C. § 920. The members acquitted Appellant of one specification of assault (Charge IV), in violation of Article 128, UCMJ, 10 U.S.C. § 928. The military judge sentenced Appellant to confinement for 30 months and a dishonorable discharge. The convening authority took no action on the findings and the sentence.

Appellant raises two issues on appeal: (1) whether the evidence was factually insufficient for a finding of guilty of sexual assault; and (2) whether the special trial counsel committed prosecutorial misconduct during closing argument by conflating theories of liability, and thus eliminating a mistake of fact as to consent defense.

We affirm the findings and sentence and find no error that materially prejudiced Appellant's substantial rights.

## I. BACKGROUND

The basis of the sexual assault charge starts with Appellant and AP, both in the same technical school at Goodfellow Air Force Base, Texas. They met through mutual friends and quickly became friendly and then intimate. AP and Appellant first hung out when Appellant picked up AP and they drove to get food in San Angelo, Texas sometime at the end of January or beginning of February 2023. The next time Appellant and AP hung out was at a club on 10 February 2023, where they talked and danced together. When they decided to

---

[2] Unless otherwise noted, all references in this opinion to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

end the events for the night, Appellant asked AP to come home with him. AP declined to go home with Appellant.

The next night, 11 February 2023, AP texted Appellant asking him to hang out and get food. Appellant picked her up and they purchased food. While in the car, AP mentioned that they would not be having sex because she had not shaved. The two returned to Appellant's dorm room sometime around 0200. After they ate the food they had purchased, both Appellant and AP got into his bed and cuddled while watching television. Cuddling then escalated to kissing, which led to consensual sex. Before having consensual sex, AP and Appellant discussed use of a condom in that it was mandatory for AP to know a condom would be used before she would consent to sex. During direct examination of AP by the special trial counsel, the following colloquy took place:

> [AP]. And we were like, taking our clothes off and stuff, and I didn't want to have — I didn't want to have sex without a condom.
>
> [Special Trial Counsel (STC)]. Did ya'll discuss that?
>
> [AP]. Yes. I asked him to if he had a condom . . . but he was kind of fighting me, asking for a condom. But I was really adamant on it because I— I didn't want to sleep with him without a condom. . . . [M]y body language at least was kind of like you need a condom to sleep with me, I'm not going to sleep with you without a condom.
>
> [STC]. Did you make it clear to him that there was no sex without a condom?
>
> [AP]. Yes, yes, he knew that.
>
> [STC]. You would not have had sex with him without a condom?
>
> [AP]. Absolutely not, no.

Appellant and AP proceeded to have consensual sex, and then after the sexual acts they redressed and went to bed. AP testified that it was weird that Appellant was really quiet during sex. AP testified that the next thing she remembered that it was at 0900 when she "woke up that mor — that next morning, um, and he was trying to penetrate me." AP further testified that Appellant was

> still behind me, but he's in a position where he's kind of like on his knees I — I never saw what position he was in, but I would assume he was like on his knees, and kind of like maneuvered himself in a way where I like wouldn't be aware that he was moving other than obviously the feeling of his stuff.

AP explained that she did not move and that she pretended to be asleep through the whole act, and she did not believe that Appellant ever saw her face. Appellant was not wearing a condom during the non-consensual sexual act and finished on AP's leg, meaning, he ejaculated and semen was deposited on her leg. After the sexual act, Appellant cleaned AP's leg and went back to sleep. AP stated that after 5 to 10 minutes, Appellant pretended to wake up for the first time while AP scrolled on her phone in the bed. Appellant scrolled on his phone after awaking with neither one saying a word about what happened. The direct examination of AP continued:

> [STC]. So, throughout this entire period, up to the point that you woke up, after you went to sleep. You didn't say anything to him?
>
> [AP]. No.
>
> [STC]. Why?
>
> [AP]. I think I was really scared. Do you mean like while it was going on?
>
> [STC]. Right.
>
> [AP]. I just — I don't — I don't think I really understood what was going on. And I think I just kind of froze. Like I don't know.

Later that morning, both Appellant and AP went to Dunkin' Donuts to have breakfast together. After breakfast, AP asked Appellant to drive her back to her dorm room. AP went back to her dorm room and showered. It was at that point that she decided to call the Sexual Assault Prevention Response (SAPR) hotline. The hotline representative told her to come to the office and AP called another Airman, BJ, to drive her there. While at the SAPR office, she filed a restricted report, but AP omitted the fact that she and Appellant had consensual sex the night before. AP then called JC another Airman from technical school who she considered to be a friend, to be with AP at the hospital for the Sexual Assault Forensic Examination (SAFE). At the hospital, AP again only talked about the assault. The SAFE nurse took swabs of the vulva, vagina, and on the leg for DNA analysis. Once AP got back to her dorm room, she did not leave for the rest of the day.

At some point after the incident, AP communicated with Appellant via text message, wherein they texted about what happened the morning of the sexual assault. Appellant admitted that, "[he understood] it was a big misunderstanding on [his] end," and "[he] didn't think AP was sleeping when [he] did it. So yes [he understood he] was dead wrong. Especially since [he] didn't even use protection." He then apologized "for not thinking straight and just doing it."

## II. DISCUSSION

### A. Factual Sufficiency

Appellant argues that the conviction for sexual assault is factually insufficient because the Government failed to disprove Appellant had a reasonable mistake of fact as to consent when he penetrated AP while she was sleeping.

#### 1. Law

##### *a. Standard of Review*

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted).

We are neither required nor empowered to review the factual sufficiency of the evidence unless an appellant both (1) asserts an assignment of error and (2) shows a specific deficiency in the proof. *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024). The current version of Article 66(d)(1)(B), UCMJ, FACTUAL SUFFICIENCY REVIEW, states:

> (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon a request of the accused if the accused makes a specific showing of a deficiency of proof.

> (ii) After an accused has made a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

> (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

> (II) appropriate deference to findings of fact entered into the record by the military judge.

> (iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1)(B), *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*).

"[T]he requirement of 'appropriate deference' when a [Court of Criminal Appeals (CCA)] 'weigh[s] the evidence and determine[s] controverted questions of fact' . . . depend[s] on the nature of the evidence at issue." *Harvey*, 85 M.J.

at 130 (third and fourth alterations in original). It is within this court's discretion to determine what level of deference is appropriate. *Id.* at 131.

"[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* at 131 (internal quotation marks omitted). For this court "to be 'clearly convinced that the finding of guilty was against the weight of the evidence,' two requirements must be met." *Id.* at 132. First, we must decide that evidence, as we weigh it, "does not prove that Appellant is guilty beyond a reasonable doubt." *Id.* Second, we "must be clearly convinced of the correctness of this decision." *Id.*

### b. Article 120(b)(2)(A), UCMJ

In order to convict Appellant of sexual assault without consent in violation of Article 120(b)(2)(A), UCMJ, 10 U.S.C. § 920(b)(2)(A), the Government was required to prove: (1) that Appellant committed a sexual act upon AP by penetrating her vulva with his penis; and (2) that Appellant did so without the consent of AP. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(2)(d).

A sexual act is "penetration, however slight, of the penis into the vulva or anus or mouth." *MCM*, pt. IV, ¶ 60.a.(g)(1)(A).

### c. Without Consent

Consent is defined as

> a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance does not constitute consent. . . . A current or previous . . . sexual relationship by itself . . . does not constitute consent.

*MCM*, pt. IV, ¶ 60.a.(g)(7).

In *United States v. Mendoza*, our superior court established that the Government could not "charge one offense under one factual theory and then argue a different offense and a different factual theory at trial" without violating an appellant's constitutional rights, as "[d]oing so robs the defendant of his constitutional 'right to know what offense and under what legal theory he will be tried and convicted.'" 85 M.J. 213, 220 (C.A.A.F. 2024) (quoting *United States v. Riggins*, 75 M.J. 78, 83 (C.A.A.F. 2016)).

*United States v. Casillas* elaborated that if the victim wakes up during the sexual act, they are thus capable of consent, and the correct theory of liability would be without consent. 86 M.J. 94, 101 (C.A.A.F. 2025).

### d. Mistake of Fact

"[I]t is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense." R.C.M. 916(j)(1). If the mistake goes to an element requiring general intent or knowledge, it "must have existed in the mind of the accused and must have been reasonable under all the circumstances." *Id.* Therefore, an honest and reasonable mistake that the victim consented to the charged sexual contact is an affirmative defense to the charged offense. *See, e.g., United States v. McDonald*, 78 M.J. 376, 379 (C.A.A.F. 2019) (considering the defense of mistake of fact to a charge of sexual assault). Once raised, the Government bears the burden to prove beyond a reasonable doubt that the defense does not exist. R.C.M. 916(b)(1); *see McDonald*, 78 M.J. at 379.

In considering whether the defense of mistake of fact as to consent was raised at trial, we "consider the totality of the circumstances at the time of the offense" and consider "whether the record contains some evidence of an honest and reasonable mistake to which the [factfinder] could have attached credit if they had so desired." *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F. 2003) (citation omitted). While the quantity of evidence required is low, the record must contain evidence supporting both the subjective "honest" and the objective "reasonable" mistaken belief. *See United States v. Davis*, 76 M.J. 224, 228–30 (C.A.A.F. 2017) (citation omitted) ("[W]hile Appellant's statement may constitute a scintilla of evidence about his 'honest belief,' . . . there is not an iota of evidence that such a belief was reasonable."); *see also United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995) (citation omitted) ("The testimony relied on by appellant tended to show objective circumstances upon which a reasonable person might rely to infer consent. However, they provided no insight as to whether appellant actually or subjectively did infer consent based on these circumstances.").

### 2. Analysis

Appellant claims that the Government (1) failed to prove the factual sufficiency of the sexual assault charge and (2) did not meet its burden to disprove that Appellant had a reasonable mistake of fact regarding consent. The Government counters that (1) Appellant failed to show a specific deficiency in proof and (2) that the Government proved that Appellant sexually assaulted AP without consent. We find Appellant indeed showed a specific deficiency in proof and thus we will analyze factual sufficiency.

Appellant admitted to the non-consensual sex act in Snapchat messages saying that he was "dead wrong" and it "was a big misunderstanding," especially since the sex act occurred "without protection." In admitting that the sex act, while AP was sleeping, was "without protection," Appellant essentially

concedes that he knew that AP would not consent to sex without the use of a condom. AP and Appellant discussed the importance of using a condom before their first sexual encounter, the consensual sexual encounter which happened during this same night, wherein AP insisted on, and Appellant used, a condom. The fact that the second sexual act took place without the use of a condom supports AP's contention that she did not consent to Appellant penetrating her while she was sleeping or otherwise in a state of non-consent.

AP immediately reported the non-consensual sexual act that occurred on 13 February 2023. The fact that she had breakfast with Appellant does nothing to vitiate her report that Appellant sexually assaulted her. Despite the fact that, when she reported the assault, AP omitted the consensual sex act, her accounts were consistent throughout the reporting process. Minor discrepancies in AP's testimony are not enough to render AP someone without credibility, as Appellant now alleges.

For a mistake of fact defense to be valid, Appellant must have held both an honest and reasonable belief that the victim consented to the sexual act. AP and Appellant had a discussion the night before about how a condom was required before AP would engage in sexual acts. Because of her insistence, Appellant complied and wore a condom during their first sexual encounter that AP agrees was consensual. Despite knowing, and admitting to knowing, AP would not consent without the use of a condom, Appellant engaged in sexual acts with AP without a condom, not knowing if AP was sleeping or awake. The Snapchat messages that followed the non-consensual sexual acts support AP's claim that Appellant knew that he had acted without AP's consent and indicate that he was aware that the sexual acts without protection were not consensual. Simply put, Appellant did not have an honest belief that the sexual acts were consensual.

Appellant's claim of mistake of fact is not reasonable. AP testified that when she awoke during the non-consensual sexual act, she was unable to see Appellant's face, meaning it was likely he too could not see her face. Additionally, AP did not move during the non-consensual sexual acts and did not say anything to give Appellant any indication that she consented to the sexual act. A reasonable person in Appellant's position would not have been able to discern if there was consent given the totality of the circumstances, and could not have concluded that there was consent given for the sexual conduct.

## B. Prosecutorial Misconduct

### 1. Additional Background

Appellant alleges misconduct regarding the following two sections of special trial counsel's closing statement, to which he provides emphasis:

> [W]hen you go back there and look at this Article 120 offense, read closely through the messages, think about her testimony. And when you do and you make those comparisons, you're going to see that it's clear beyond reasonable doubt that he sexually assaulted her, and that she did not consent, and that he — he — or at least there was no reasonable mistake of fact to her consent. She is laying there asleep. She wakes up, he's starting to penetrate her, she just lays there. *And whether or not she's asleep or awake at this point, is irrelevant because he still doesn't have consent.*

> Lying there without moving. She didn't resist. She didn't say anything. She didn't fight. She didn't fight back. And she didn't stop him. She just laid there. The law doesn't allow somebody to go, you didn't resist you just laid there. *Oh, you asleep, I didn't want to wake you up to ask for consent.*

There were no objections by trial defense counsel, nor were any sua sponte curative instructions given by the military judge.

### 2. Law

We review prosecutorial misconduct and improper argument de novo and where, as here, no objection is made, we review for plain error. *United States v. Matti*, CAAF LEXIS 189 (C.A.A.F. 2026). *See also United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citations omitted). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Baer,* 53 M.J. 235, 237 (C.A.A.F. 2000) (citations omitted).

The standard for determining prosecutorial misconduct was established in *Berger v. United States*, in which the Supreme Court stated that trial counsel "may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." 295 U.S. 78, 88 (1935). Trial counsel is entitled "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Baer*, 53 M.J. at 237 (citation omitted). However, the Rules for Courts-Martial and existing case law both establish that it is error for trial counsel to make arguments that "unduly . . . inflame the passions or prejudices of the court members." *United States v. Marsh*, 70 M.J. 101, 102 (C.A.A.F. 2011) (omission in original) (quoting *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007)); R.C.M. 919(b), Discussion.

"When a trial counsel makes an improper argument during findings, 're-versal is warranted only when the trial counsel's comments taken as a whole were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.'" *United States v. Norwood*, 81 M.J. 12, 19 (C.A.A.F. 2021) (quoting *Andrews*, 77 M.J. at 401–02). In general, appellate courts "weigh three factors to determine whether trial counsel's improper arguments were prejudicial: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.'" *Andrews*, 77 M.J. at 402 (quoting *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)).

Where an error is of constitutional dimensions, an appellate court may not affirm the result unless the error was "harmless beyond a reasonable doubt." *United States v. Mason*, 59 M.J. 416, 424 (C.A.A.F. 2004) (citation omitted). This inquiry requires the Government to demonstrate that there was no reasonable possibility that the error might have contributed to the conviction. *United States v. Tovarchavez*, 78 M.J. 458, 462 n.5 (C.A.A.F. 2019) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

### 3. Analysis

#### a. Section 1 of Special Trial Counsel's Argument

The first contested section of special trial counsel's argument regarding the relevance of "whether or not [JP] is asleep or awake at that point" was not erroneous because the Article 120, UCMJ, violation was charged as sexual assault without consent. In *Casillas*, it was established that if the victim awoke during the sexual act, a correct theory of liability could be without consent. *Casillas*, 86 M.J. at 101. The victim testified that she was awake at some point during the non-consensual penetration and so the special trial counsel was well within the parameters of proper argument when he argued that her state of awareness at the time of the non-consensual act does not change the fact that she was, at some point, awake and able to consent and Appellant did not have her consent.

#### b. Section 2 of Special Trial Counsel's Argument

The second contested statement of special trial counsel's closing argument, "[o]h, you asleep, I didn't want to wake you up to ask for consent," was also not error because in the context of counsel's preceding sentence about the law, it explained the law regarding consent, which the members were instructed they had a duty to examine in their deliberations. Assuming without finding the statement could be error, the statement was not prejudicial because it was not severe, as it only happened once, and again since it was in closing argument, the military judge provided an instruction stating members were not to regard closing statements as evidence, which both cures any potential improper

argument and goes to show the lack of weight given to the statement. Considering the totality of the evidence provided during trial, this statement, if it was error, was harmless beyond a reasonable doubt.

### c. Eliminating Mistake of Fact as a Defense

Appellant argues that the contested statements made by the special trial counsel effectively eliminated mistake of fact as a defense. Given we find both contested statements were proper and did not amount to error, we further find that if arguably erroneous, there was no prejudice to Appellant. There is no conflation of theories of liability, and there is a very low likelihood that given all the evidence the members heard at trial and the length of the Government's closing argument covering 18 pages of transcript, two statements in the closing argument did not prejudice Appellant and had no harmful effect on the conviction. Thus, we find no prosecutorial misconduct.

## III. CONCLUSION

The findings are correct in law and fact. *See* Article 66(d), UCMJ, 10 U.S.C. § 866(d) (2024 *MCM*). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court